### DAVIS, MARTIN & Co. v. THE CITY OF NEW ORLEANS.

Where the contract between the plaintiffs and the defendant was " *to do and perform, during the space of five years from the 22d of July,* 1850, *all the work necessary for building wharves and repairing and keeping in good order the levee and the wharves in front of Municipality No.* 1," etc.—*Held :* That the plaintiffs were bound to do, at all times, the work necessary to repair and keep in good order, the wharves and levee, and to leave them in good order at the expiration of the period named.

APPEAL from the Sixth District Court of New Orleans, *Cotton,* J. *McCay & Edwards* and *C. Roselius,* for plaintiffs and appellants. *Livingston* and *Benjamin, Bradford & Finney,* for defendant.

SPOFFORD, J. The plaintiffs demand of the city the sum of $22,750, as a balance alleged to be due them under a contract for repairing wharves, &c.

The defendant pleads that the plaintiffs have forfeited all claims to this balance, by reason of neglect and violations of their contract in various particulars.

The contract was " to do and perform, during the space of five years from the 22d July, 1850, all the work necessary for building wharves, and repairing and keeping in good order the levee and the wharves in front of Municipality No. 1, between Canal street and the Ferry landing, inclusively, in front of St. Ann street, for the sum of $45,000 *per annum.*"

The money was to be paid quarter yearly, upon the certificate of the Surveyor of the Municipality that the work had been done according to contract, reserving, however, one-third of each payment as a guarantee, until the end of the year.

The plaintiffs failed to procure the certificate of the surveyor for the last quarter of the last year of their contract, ending the 22d July, 1855.

The present claim is for the installment which would have been due for the last quarter, and the reserved third which would have been due for the three previous quarters, had the plaintiffs faithfully discharged their duties.

The District Court gave judgment for the defendant, and the plaintiffs have appealed.

It is abundantly established, that on the 22d July, 1855, the wharves, which the plaintiffs had undertaken to keep in good order, were in a wretched condition, and that it would have cost more than the sum sued for to put them in good order and repair.

But the plaintiffs seem to think they were not bound by their contract to *leave* the wharves in good condition, but only to put them in such condition once a year. They contend that, as substantial repairs could only be made in low water, and usual low water season ranges from July to November, they have done enough by making thorough repairs in the summer of 1854, and had a right to leave the wharves rotten at the expiration of their contract in the summer of 1855, al- though the water was low during the spring and summer of that year.

There was no such privilege accorded to them in the contract. Their obligations were continuous and incessant. They agreed to do, at all times, the work necessary to repair and *keep in good order* the wharves and levees. They were bound to *leave* them in good order.

The amended specification referred to in their contract, upon which they rely to show that they were only bound to do a thorough job once a year, does not re- fer to the keeping in good repair, but to only " *new wharves* and *changes* that might be ordered by the council," which they were required to begin on the 1st of July of each year, and to have completed on the 31st October.

They also seem to think that the Surveyor's certificates are conclusive, that all the work was well done up to the 22d of April, 1855, and that the city can- not go behind that period to inquire whether they fulfilled their engagements faithfully. The reservation of one-third of the installment due each quarter until the end of the year, for which the city stipulated, shows that such was not the intention of the parties. The Surveyor's certificate was not made the sole criterion of the excellence of the work done by the contractors. It was only a necessary prerequisite to the payment of any portion of the quarterly install- ments.

The appellants rely upon the testimony of the City Surveyor, to show that they complied with their contract. The District Judge observed that his official action and reports did not seem to tally with his testimony at a later period. The testimony of other witnesses, who had critically examined the wharves, out- weighed the loose opinions of superficial observers in favor of the claim of the plaintiffs. It seems that the City Surveyor, even while reporting the contrac- tors as unfaithful to their obligations, nevertheless recommended that the last installment be granted, to avoid litigation ; assigning, as a reason, that, in most cases, the city had been mulcted in damages and costs.

Every case must stand or fall upon its own merits. If the mere opinion and advice of a City Surveyor, although in contradiction to his official acts and re- ports, and to the testimony of observant and painstaking witnesses, is to con- clude the City Council and the courts, upon the merits of a contractor's claims the city treasury might be given over to spoliation.

No such binding efficacy is to be attached to the opinions of a single officer ; no such lure has been held out to contractors to secure his favor ; but those who contract with the city, as those who contract with a private party, should be held to a faithful compliance with their engagements ; and those members of the council who demand that contracts with the city should be executed, in letter and spirit, as private contracts are executed, and who devote a portion of their

79

time to a careful inspection of works done for the public, are only fulfilling a public duty.

Judgment affirmed, with costs.

Re-hearing refused.